IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DONALD A. ZALIMENI, JR., ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION: 1:19-00245-KD-C |
| ) | |
| COOPER MARINE and TIMBERLANDS ) | |
| CORP., *et al.*, ) | |
|     Defendants. ) | |

**ORDER**

This matter is before the Court on the Defendants' motion for summary judgment (Doc. 22), the Plaintiffs' Response (Doc. 25) and the Defendants' Reply (Doc. 26).

**I.     Findings of Fact**[1]

On May 23, 2019, Plaintiff Donald A. Zalimeni, Jr. (Zalimeni) initiated this maritime action (Jones Act case) for negligence, unseaworthiness, and maintenance and cure, against Defendants Cooper Marine and Timberlands Corp. (CMT) (an Alabama entity) and Cooper T. Smith Stevedoring Co., Inc. (Smith) (a Louisiana entity). (Doc. 1). Notably, Zalimeni acknowledges that suit was filed after expiration of the statute of limitations but alleges that he was lulled into missing the deadline due to representations of Defendants, thus he alleges they fraudulent concealed to toll the applicable statute of limitations. (Doc. 1 at ¶29).[2] According to

---

[1] The facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

[2] Section 30106 of Title 46 governs the timeframe for filing claims related to maritime injuries and provides: "[e]xcept as otherwise provided by law, a civil action for damages for personal injury ... arising out of a maritime tort must be brought within 3 years after the cause of action arose." 46 U.S.C. § 30106.

1

Zalimeni, at no time did Defendants' representatives inform him of the three (3) year statute of limitations for the Jones Act, or the general maritime law statute of limitations, that he had substantive rights under the Jones Act or general maritime law, and/or that he needed to file suit before 2019 to protect his rights to damages and future benefits, including medical treatment.

Specifically, this case stems from injuries Zalimeni suffered on May 6, 2016 (traumatic amputation of four (4) fingers on his left hand). (Doc. 1). In May 2016 Zalimeni was employed by CMT as a derrick crane[3] operator on the vessel MOODY, moored at the Chico Terminal in Mobile County, Alabama (Port of Mobile). (Id. at 2) The A-frame shive on the vessel was defective and prior to this date, had been "spitting" grease on the A-frame deck, causing the crew to place absorbent material on the deck to soak up the excess grease. (Id. at 3). From time to time, the absorbent material would become entangled with the crane's boom line and have to be removed. (Id.) At 6:00 p.m. Zalimeni climbed the stairs to the A-frame section of the crane to grease and inspect the shive. (Id.) After completing the inspection and cleaning the crane's boom line, Zalimeni started to leave area. (Id. at 4). Simultaneously, another individual moved the crane's boom to place it in its cradle. (Doc. 1 at 4). The boom movement caused the vessel to shift, which when combined with the greasy deck, caused Zalimeni to slip and fall. (Id.) While trying to stop his fall, with arms outreached, Zalimeni's gloved left hand was pulled into the shive, resulting in severe damage. (Id.) Four (4) fingers on Zalimeni's left hand were ultimately surgically amputated, and he also sustained injuries to his left arm and cervical spine. (Id.)

Thereafter, from 2016 - May 2019 Zalimeni met four (4) times with CMT's Vice-President Claims Director Bob Pittman (Pittman) and Assistant Vice-President Claims Amy Slay (Slay) --

---

[3] Used to load/unload cargo at CMT's Chipco facility on the Mobile River. (Doc. 22 at 2).

2

in May 2016, December 2017, March 2018, and August 2018. (Doc. 22 at 3; Doc. 22-2 (Defs' Initial Discl. at 1-2)). Per Zalimeni's complaint, at these meetings Defendants' representatives assured him that the insurance company would "take care of him," that he did not need an attorney, that he would receive significantly less money if he hired an attorney, and that if he did, the insurance company would stop his benefits. (Doc. 1).

Evidence of record supports the following facts: The initial meeting -- with Pittman, Slay and other managerial employees -- occurred a few weeks after the accident in May 2016, at which time Pittman explained Zalimeni's medical and wage benefits. (Doc. 22-1 at 2-4 (Dep. Zalimeni)). They explained that Defendants would cover Zalimeni's medical expenses, and how the process "would go with trying to get me on the road to recovery." (Id. at 4 (Dep. Zalimeni)). Per Zalimeni, Pittman told him that "if at any time I felt I wasn't being treated fairly...to come talk to him. And if it can't be resolved, then I was more than welcome to get an attorney. But if I did that, then all benefits and medical would stop at that point." (Id. at 5-6 (Dep. Zalimeni)). Zalimeni does not recall Pittman mentioning anything about a three (3) year time limit within which to file suit. (Id. at 5 (Dep. Zalimeni)).

At the second meeting with Pittman and Slay in December 2017, the parties discussed Zalimeni's treating physician's maximum medical improvement determination (MMI by Dr. Barbour) and settlement of his claims. (Doc. 22-1 at 8, 19 (Dep. Zalimeni)). Pittman told Zalimeni he was welcome to get an attorney if he believed it necessary, adding that if he retained one he or she would take a percentage of what would be ultimately recovered. (Doc. 22-1 at 9-11 (Dep. Zalimeni)). Zalimeni is "certain" that Pittman did not say anything about a three (3) year time limit within which to file suit. (Id. at 10 (Dep. Zalimeni); Doc. 25-6 (Aff. Zalimeni at 1)).

At the third meeting in March 2018 with Pittman, Slay, and Zalimeni's wife and father, a second opinion had been obtained (Dr. Burkett) that Zalimeni had reached maximum medical improvement. Zalimeni was also not satisfied because he wanted to find a doctor who could help him with his pain and get him back to work. (Doc. 22-1 at 11-12 (Dep. Zalimeni)). Pittman again told Zalimeni that he was free to retain an attorney. (Id. at 12 (Dep. Zalimeni)). Per Zalimeni, Pittman did not tell him that he had three (3) years before the statute of limitations expired for his claim. (Id.)

At the fourth meeting with Pittman, Slay and Zalimeni's wife, in August 2018, Zalimeni had been undergoing pain management treatment with Dr. Knopp, and they discussed his treatment plan. They again discussed settlement and Pittman again told Zalimeni that he free to retain an attorney. (Doc. 22-1 at 52 (Dep. Zalimeni)). Pittman also stated that they were going to have to settle the case. (Id.) However, based on the fact that Cooper would cease paying benefits, Zalimeni did not think it was in his best interest to hire an attorney. (Doc. 25-6 (Aff. Zalimeni at ¶11)). On August 28, 2018, Defendants gave Zalimeni what they characterized as a $20,000 lost wage advance. (Doc. 25-3 at 39-40, 56-57 (Dep. Slay)).

Suzanne Zalimeni, Zalimeni's wife, asserts that she attended the March 2018 and August 2018 meeting. (Doc. 25-8 at 1-2 (Aff. S. Zalimeni)). She contends that at the March 2018 meeting Defendants stated that they could hire a lawyer but all funding would stop and Zalimeni would lose his job. (Id.) Settlement was also discussed. (Id.) At the August 2018 meeting, an offer of settlement was made but it was tabled in favor of "sorting out the treatment plan" for Zalimeni. (Id. at 2). "Based on the general tone of these meetings" she and Zalimeni felt that "the company was looking out for our bests interests" and "would ultimately take care of [Zalimeni]". (Id. at 3

at ¶10). Slay did not notify Zalimeni that his claim was coming to an end or that he only had a certain time period within which to bring a claim. (Id. at 3). Instead, Defendants appeared "eager" to settle. (Id.)

Defendants assert that in March or April 2019, they had conversations with Zalimeni mentioning that "we needed to settle his claim[,]" but without stating specifically that his payments would stop soon or giving him a timeline. (Doc. 25-3 at 58-59 (Dep. Slay)). Slay decided when to stop payments to Zalimeni based on his reaching MMI. (Id. at 59-60 (Dep. Slay)).

While Zalimeni regularly received his maintenance check every other Thursday, on May 16, 2019 he did not. On May 17, 2019, Zalimeni inquired about his benefits with Slay and she told him via telephone, without explanation, the benefits had stopped and that he needed to think of a settlement and get back with her. (Doc. 25-6 at 2 (Aff. Zalimeni)). Slay did not tell Zalimeni that the statute of limitations had run on his claim. (Id. at 1 (Aff. Zalimeni); Doc. 25-3 at 39 (Dep. Slay)). However, Defendants were still willing to entertain discussions with Zalimeni to settle his case even after the 3-year statute of limitations expired. (Id. at 39 (Dep. Slay)).

In May 2019, when his payments stopped, Zalimeni searched Alabama workers' compensation laws on-line, as he believed his claim fell under same based on prior experience. (Doc. 25 at 10; Doc. 25-4 at 20-21 (Dep. Zalimeni); Doc. 25-6 at 2 (Aff. Zalimeni)). From that, he believed he had two (2) years from the date of his last check to retain counsel and file suit. (Doc. 25-4 at 21 (Dep. Zalimeni). On May 21, 2019, Zalimeni retained counsel and was informed of his rights and remedies, including time limits. (Doc. 25 at 11).

Defendants paid Maintenance/Cure for Zalimeni at the rate of $40/day, until the 3-year anniversary of the incident (Doc. 25-3 at 12-13, 43-44 (Dep. Slay)), and paid medical expenses for

5

him beyond the 3-year mark. (Doc. 25 at 2). Indeed, Defendants paid a medical bill for Zalimeni's May 14, 2019 treatment and May 15, 2019 treatment; they did not refuse or tell the physician or Zalimeni that such would not be paid due to the expiration of the 3-year statute of limitations period for his claim. (Doc. 25-3 at 50-52 (Dep. Slay)). Similarly, Defendants paid bills for prescriptions Zalimeni incurred on May 20, May 23, June 6, and July 12, 2019. (Id. at 53-55 (Dep. Slay)). Overall, Defendants paid Zalimeni's medical bills from May 11, 2016 through July 12, 2019. (Doc. 25-5 (payment history)).

According to Zalimeni, he relied on and was induced by the representations made by Defendants, which caused him not to retain an attorney, gave him a false sense of security that benefits would not be abruptly discontinued, and that he would eventually be taken care of by the Defendants as promised. Zalimeni contends further, that his treating spine specialist, Theodore Kopp, M.D. (Dr. Kopp), has not declared him to be at MMI and has requested authorization for additional treatment, which has been denied or ignored by Defendants.

According to Defendants, they paid Zalimeni maintenance and cure through and beyond the point at which he reached MMI. (Doc. 8 at 4). Defendants also assert that Zalimeni's claims are barred by the applicable statute of limitations. (Doc. 8 at 7). Defendants move for summary judgment on the basis that Zalimeni's claims are time-barred and lacking in support for equitable tolling or estoppel because he did not exercise due diligence and was repeatedly told that he was welcome to obtain counsel if dissatisfied with how his claim was being handled. (Doc. 22).

**II.      Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Rule 56(c) provides as follows:

> *(c) Procedures*
> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c).

The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If the nonmoving party fails to make "a sufficient showing on an essential element

of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992).

### III. Conclusions of Law

#### A. Equitable Estoppel

Defendants move for summary judgment on the grounds that Zalimeni's claims are time-barred. As to his seaworthiness and negligence claims, Zalimeni's contends that Defendants should be equitably estopped from asserting the statute of limitations because: 1) he relied on, and was induced by Defendants' representations -- i.e., "lulled into a false sense of security" -- that his claim would be settled; and 2) defendants failed to notify him of any time limit for litigating. Zalimeni clarifies that "he is relying on principles of equitable estoppel to support the viability of his claims and not on equitable tolling." (Doc. 25 at 4 at n.3).

Defendants respond that equitable tolling is not available because there was no misconduct or "trickery" on their part, and because Zalimeni failed to exercise due diligence. Defendants further assert that equitable estoppel is not available to Zalimeni because there is no evidence that any representations made to him were "contrary to a later asserted position," and that the statements upon which he relied (that he would be "tak[en] care" of and "don't worry about it" etc.) are too vague such that he could not have reasonably relied on any such statements. (Doc. 26).

8

Zalimeni roots his contentions in equitable estoppel: namely, that he "reasonably relied on Cooper's executive employee's conduct and representations, which persuaded and induced him into believing his claims would be resolved without litigation and it would therefore be in his best interests to refrain from hiring a lawyer." (Doc. 25 at 4).

"Equitable estoppel arises where the parties recognize the basis for suit, but the wrongdoer prevails upon the other to forego enforcing his right until the statutory time has lapsed." *Cook v. Deltona Corp.*, 753 F.2d 1552, 1563 (11th Cir. 1985) (quotations and citations omitted). For this doctrine to apply Zalimeni must show: 1) conduct by Defendants which amounts to a false representation or concealment of material facts; 2) the intention or at least the expectation, that such conduct shall be acted upon by, or influence, him; and 3) knowledge, actual or constructive, of the real facts. *Lurry v. Transcor Am., LLC*, 140 Fed. Appx. 79, 81 (11th Cir. 2005). Additionally, Zalimeni must show: "(1) lack of knowledge and of the means of knowledge of the truth; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice." Id. Moreover, "there appears no reason in principle why knowledge of the statutory period should be a critical factor in the invocation of equitable estoppel. The gravamen of the doctrine is that the party so pleading was induced to rely upon certain representations, not that he was fully aware of the consequences of reliance should it prove to have been mistaken." U.S. for Use of Nelson v. Reliance Ins. Co., 436 F.2d 1366, 1371 (10th Cir. 1971).

Zalimeni has failed to point to any false representations made by Defendants regarding the statute of limitations. Rather, Zalimeni relies on Defendants' failure to advise him that he had to

9

file suit before May 2019 or his claim would expire. The failure to so advise is not concealment unless Defendants had a duty to advise. No such duty existed.

Zalimeni has also failed to point to any false statements made by Defendants regarding his medical care or settlement of his claim. As for Zalimeni's argument that he was "lulled" into not filing suit, "the defendant must have engaged in conduct that 'amount[s] to an affirmative inducement...to delay bringing action,'.... evaluated by....'whether a reasonable person would have allowed the statute of limitations to expire based on the defendants' actions.' *Pate v. Toto,* 2018 WL 4951975, *12 (N.D. Ala. Oct. 12, 2018) (citations omitted)." Foster v. Poultry Farms, Inc. v. Water Works & Sewer Board of the City of Demopolis, 370 F.Supp.3d 1341 (S.D. Ala. Feb. 25, 2019). See also *McAllister v. FDIC,* 87 F.3d 762, 767 (5th Cir.1996) ("Under the doctrine of equitable estoppel, a defendant is estopped from asserting a limitations defense when its conduct induced or tricked a plaintiff into allowing a filing deadline to pass[]").

The affirmative conduct relied upon by Zalimeni is Defendants' initial promise to help him get on the road to recovery, their payment of his medical expenses (even after two doctors indicated he had reached MMI), and continued discussions of settlement. None of these actions amounts to pernicious lulling. And settlement negotiations or expressions of interest in settlement are insufficient to apply equitable estoppel because the conduct "must amount to an affirmative inducement to the claimant to delay bringing action." Regions Bank v. Old Republic Union Ins. Co., 2016 WL 11622129, *10 (N.D. Ala. Jan. 20, 2016).

This case is more akin to Huseman v. Icicle Seafoods, Inc., 471 F.3d 1116 (9th Cir. 2006). In Huseman, the Court found equitable estoppel inapplicable where a Jones Act/unseaworthiness plaintiff "just 'assumed' that [the defendant]...would take care of everything for him...because [the

10


defendant]....was helping with his...workers' compensation benefits." Id. at 1123-1124.  As in Huseman, there was no statements misleading Zalimeni, rather Zalimeni assumed the Defendants would continue to pay his medical bills and take care of him in general.  It is not reasonable for Zalimeni to have assumed that this would continue indefinitely, especially in light of Defendants expressed eagerness (starting at least eight months prior to the expiration of the statute of limitations) to settle any claims.

The Eleventh Circuit explained in Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1323-1324 (11th Cir. 1989) (emphasis added):

> To successfully invoke the doctrine, the late arriving plaintiff must show that she was misled by defendant or its agents so that [s]he delayed suit because of (a) an affirmative statement that the statutory period to bring the action was longer than it actually was, **or** (b) promises to make a better settlement of the claim if plaintiff did not bring suit or (c) comparable representations and conduct.

And the "conduct or representations [must be] directed to the very point of obtaining the delay [in filing suit] of which [it] seeks to take advantage." Kazanzas v. Walt Disney World Co., 704 F.2d 1527, 1532 (11th Cir. 1983).

Stated simply, Zalimeni has failed to show how he was reasonably misled by any specific promises. In fact, Zalimeni has failed to point to any specific promises made by Defendants. Rather, Zalimeni chose not to engage an attorney because he did not feel it was in his best interest. He also had faith in his employer that they wanted to help him until he could get back to work, apparently no matter how long it took.  And while that faith may have been misplaced, Defendants did not engage in any actions that would warrant equitable estoppel.  For these reasons, Zalimeni cannot avail himself of equitable estoppel.  Defendants motion for summary judgment as to Zalimeni's claims of seaworthiness and negligence is **GRANTED.**

**B. <u>Laches</u>**

Zalimeni also contends that "as to the maintenance and cure counts, the Court should find the doctrine of laches applies and that Zalimeni filed suit as soon as he determined Cooper stopped paying maintenance and cure, and that Cooper is not prejudiced by his filing suit two weeks after maintenance and cure stopped." Defendants contend, incorrectly, that the court should apply a strict application of the three-year statute of limitations to this claim.

> "Maintenance and cure is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery." *Vaughan v. Atkinson,* 369 U.S. 527, 531, 82 S.Ct. 997, 1000, 8 L.Ed.2d 88 (1962). "Maintenance is a *per diem* living allowance, paid so long as the seaman is outside the hospital and has not reached the point of 'maximum cure.' Cure involves the payment of therapeutic, medical and hospital expenses not otherwise furnished to the seaman, again, until the point of 'maximum cure.' " *Pelotto v. L & N Towing Co.,* 604 F.2d 396 (5th Cir.1979). "The Supreme Court has long recognized the importance of these remedies ... and has declared that the doctrines of maintenance and cure are to be liberally construed to benefit the seaman." *Caufield v. AC & D Marine, Inc.,* 633 F.2d 1129, 1132 (5th Cir.1981). "When there are ambiguities or doubts, they are resolved in favor of the seaman." *Vaughan,* 369 U.S. at 532, 82 S.Ct. at 1000.

<u>Cooper v. Diamond M Co.</u>, 799 F.2d 176, 178–79 (5th Cir. 1986).

"The timeliness of maintenance and cure claims is governed by the equitable principle of laches, however we have applied the three-year limitations period from § 30106 as a benchmark in reviewing laches-based decisions of the district court." <u>Jones v. Tidewater Marine, LLC</u>, 262 F. App'x 646, 648 (5th Cir. 2008). A "defendant must demonstrate the presence of three elements in order to successfully assert laches as a defense: (1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." <u>Kason Indus., Inc. v. Component Hardware Grp., Inc.</u>, 120 F.3d 1199, 1203 (11th Cir. 1997). Applying the benchmark of 3 years, the court finds that there was a delay in

12

asserting the right to maintenance and cure. However, the Defendants have failed to offer any evidence of undue prejudice due to the two-week late filing of the claim. Accordingly, Defendants' motion for summary judgment on Zalimeni's claim for maintenance and cure is **DENIED**.

### V.     Conclusion

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment (Doc. 22) is **GRANTED** as to the claims of seaworthiness and negligence and **DENIED** as to the claim for maintenance and cure.

**DONE** and **ORDERED** this the **10th** day of **March 2020.**

/s/Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**